# EXHIBIT 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

_____

In Re:                                          :        Chapter 7
                                                :
CaaStle, Inc.,                                  :        Case No. 25-11187 (BLS)
                                                :
        Debtor.                 :
_____         :
                                                :
GEORGE L. MILLER, solely in his                 :
capacity as chapter 7 trustee for the           :
bankruptcy estate of CaaStle, Inc.,             :
CHAPTER 7 TRUSTEE,                              :
                                                :        Adv. Pro. No. 25-52349 (BLS)
        Plaintiff,              :
    v.                                 :
                                                :
KSV CAASTLE HOLDINGS L.P., KSV                   :
KSV CAASTLE HOLDINGS II L.P.                     :
and P180 Inc.                                   :
                                                :
        Defendants.             :

## KSV DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR PRELIMINARY INJUNCTION ENFORCING THE AUTOMATIC STAY PURSUANT TO SECTIONS 105(A) AND 362(A) OF THE BANKRUPTCY CODE

| **GREENBERG TRAURIG, LLP** | **GREENBERG TRAURIG, P.A.** |
|:---:|:---:|
| Anthony W. Clark (DE Bar No. 2051) | Joseph J. Mamounas |
| Dennis A. Meloro (DE Bar No. 4435) | Adrian Nunez |
| 222 Delaware Avenue, Suite 1600 | Ketan Ganase |
| Wilmington, Delaware 19801 | 333 SE Second Avenue, Suite 4400 |
| Tel: (302) 661-7000 | Miami, Florida 33131 |
| anthony.clark@gtlaw.com | Tel: (305) 579-0500 |
| dennis.meloro@gtlaw.com | mamounasj@gtlaw.com |
| | nuneza@gtlaw.com |
| | ketan.ganase@gtlaw.com |

# TABLE OF CONTENTS

Preliminary Statement ..................................................................................................... 1

Nature and Stage of Proceedings ...................................................................................... 3

    A.    The Florida Action ................................................................................................ 3

    B.    The CaaStle, Inc. Chapter 7 Filing ..................................................................... 4

Argument ........................................................................................................................... 5

    I.     While this Court has Jurisdiction, Generally, to Enforce the Automatic
          Stay, it Does Not Have Jurisdiction Over Two Non-Debtors, or
          Litigation Between Two Non-Debtors ................................................................. 5

    II.    KSV's Claims are Direct Claims, and Do Not Belong to the Chapter 7
          Estate ................................................................................................................... 5

    III.   The Automatic Stay Does Not Apply to the Florida Action ................................ 8

    IV.   The Florida Litigation Will Not Have a Preclusive Effect on Any
          Chapter 7 Trustee Claims .................................................................................. 10

    V.    The Court Can Fashion an Appropriate Remedy to the Extent there are
          Competing Claims to Insurance Proceeds .......................................................... 11

    VI.   Injunctive Relief is Not Warranted .................................................................... 12

Conclusion ...................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanced Marketing Svcs., Inc.*,
360 B.R. 421 (Bankr. D. Del. 2007) ........................................................... 13, 14

*Albert v. Alex Brown Mgm't Servs., Inc.*,
2005 WL 2130607 (Del. Ch. Aug. 26, 2005) ..................................................... 8

*In re Aliera, Inc.*,
2025 WL 2091090 (Bankr. D. Del. July 24, 2025) ............................................ 6

*In re Allied Digital Techs., Corp.*,
306 B.R. 505 (Bankr. D. Del. 2004) ........................................................... 11, 12

*In re American Film Technologies, Inc.*,
175 B.R. 847 (Bankr. D. Del. 1994) ....................................................... 9, 11, 13

*In re Cont'l Airlines*,
203 F.3d 203 (3d Cir. 2000) ........................................................................... 11

*Continental Group, Inc. v. Amoco Chemicals Corp.*,
614 F.2d 351 (3d Cir. 1980) ........................................................................... 13

*In re DBSI, Inc.*,
409 B.R. 720 (Bankr. D. Del. 2009) ............................................................... 13

*In re Downey Fin. Corp.*,
428 B.R. 595 (Bankr. D. Del. 2010) ............................................................... 11

*In re Ebix, Inc. Stockholder Litig.*,
2014 WL 3696655 (Del. Ch. July 24, 2014) ..................................................... 8

*In re Emoral, Inc.*,
740 F.3d 875 (3d Cir. 2014) ............................................................................. 6

*In re Exide Techs.*,
544 F.3d 196 (3d Cir. 2008) ............................................................................. 5

*In re Extraction Oil & Gas, Inc.*
2020 WL 7074142 (Bankr. D. Del. Dec. 3, 2020) ............................................. 9

*First Fidelity Bank v. McAteer*,
985 F.2d 114 (3d Cir. 1993) ........................................................................... 12

ii

*Freedman v. Adams*,
  2012 WL 1345638 (Del. Ch. Mar. 30, 2012) .......................................................8

*Gray v. Hirsch*,
  230 B.R. 239 (S.D.N.Y. 1999)............................................................................9

*Lubrizol Corp. v. Exxon Corp.*,
  929 F.2d 960 (3d Cir. 1991) .............................................................................10

*Maritime Electric Co. Inc. v. United Jersey Bank*,
  959 F.2d 1194 (3d Cir. 1991)..............................................................................9

*In re Midway Games Inc.*,
  428 B.R. 303 (Bankr. D. Del. 2010) ..................................................................8

*Miller v. McDonald (In re World Health Alts., Inc.)*,
  369 B.R. 805 (Bankr. D. Del. 2007) ................................................................12

*In re MultiPlan Corp. Stockhoders Litig.*,
  268, A.3d 784, 803-04 (Del. Ch. 2022)..............................................................8

*In re Pelullo*,
  1991 WL 773509 (E.D. Pa. Sept. 30, 1999) .....................................................11

*Queenie, Ltd. v. NYGARD Int'l*,
  321 F.3d 282 (2d Cir. 2003) .............................................................................11

*In re R.E. Loans LLC*,
  519 B.R. 499 (Bankr. N.D. Tex. 2014) ..............................................................7

*Raytech Corp. v. White*,
  54 F.3d 187 (3d Cir. 1995) ...............................................................................10

*In re Seven Seas Petroleum, Inc.*,
  522 F.3d 575 (5th Cir. 2008)...............................................................................7

*SN Liquidation, Inc. v. Icon Int'l, Inc. (In re SN Liquidation, Inc.)*,
  388 B.R. 579 (Bankr. D. Del. 2008) ...........................................................11, 12

*In re TPC Group, Inc.*,
  2023 WL 2168045 (Bankr. D. Del. Feb. 22, 2023) ...........................................6

*In re Uni-Marts, LLC*,
  405 B.R. 113 (Del. Bankr. 2009) .......................................................................9

**Statutes**

Bankruptcy Code section 105(a)...........................................................................................1, 13

Bankruptcy Code section 362.......................................................................................1, 2, 9, 11

KSV CaaStle Holdings LP ("**KSV-I**") and KSV CaaStle Holdings II LP ("**KSV-II**," and together with "KSV-I," "**KSV**") hereby submit their Memorandum of Law in opposition to George L. Miller's, as chapter 7 trustee (the "**Trustee**") *Motion for Preliminary Injunction Enforcing the Automatic Stay Pursuant to Sections 105(a) and 362(a) of the Bankruptcy Code* (the "**Motion**"), and in support hereof respectfully state as follows:[1]

## Preliminary Statement

KSV unwittingly and unfortunately found itself a victim in the highly publicized and still unraveling multi-million-dollar fraud perpetrated by the Debtor's former CEO, Christine Hunsicker ("**Hunsicker**"). KSV was misled and then embroiled in Hunsicker's fraud when she induced KSV to invest in CaaStle Inc. (the "**Debtor**" or "**CaaStle**") by, among other things, misrepresenting the financial condition of CaaStle: Hunsicker falsified financial records that overstated revenue by as much as 33-fold, misrepresented EBITDA as being close to positive nine-figures when CaaStle's EBITDA was actually in the negative nine-figures, and falsely claimed CaaStle had hundreds of millions of dollars in liquidity when, in reality, it had less than $1 million in cash.

As a result of these egregious and material misrepresentations and omissions, KSV invested in CaaStle in exchange for shares that today are worthless. As set forth below, KSV filed its complaint against Hunsicker in Florida state court on April 18, 2025. A true and correct copy of the complaint is attached hereto as <u>Exhibit A</u>. Judgment was entered in favor of KSV and

---

[1] KSV consents, pursuant to Local Rule 7008-1, to the entry of a final order by the Court with respect to this Motion if it is determined that the Court lacks authority under Article III of the United States Constitution to enter such final order absent the consent of the parties.

against Hunsicker on August 19, 2025.[2]  A true and correct copy of the judgment is attached hereto as <u>Exhibit B</u>.

The Trustee's complaint and requests for injunctive relief (whether through Bankruptcy Code sections 362 or 105 in this adversary proceeding) are based on a misreading of KSV's Florida complaint and claims against Hunsicker.   KSV's claims are direct, not derivative, claims against Hunsicker.  As a result, these claims are not property of the Debtor's estate and, accordingly, are not subject to the automatic stay.  There are no extraordinary or unusual circumstances to justify extending the automatic stay to enjoin litigation against a non-debtor defendant (and no party has sought that relief).  Nor has the Trustee provided <u>any</u> evidence to support his arguments.  For the same reasons, the Trustee has not met the high burden for entry of an injunction barring KSV's prosecution of its complaint in Florida.

Moreover, on the present record, where the Trustee bears the burden, it cannot be determined which claims the Trustee intends to bring.  The Trustee states that the Florida Action "threatens the Trustee's ability maximize recovery for Chapter 7 Creditors to the extent that those actions assert causes of action which belong to the estate or which assert claims against the same parties based on the same or related facts."  Trustee's Memorandum at p.2.  While KSV submits that a fulsome analysis of its complaint makes clear that its claims are not property of the Debtor's estate, as explained more fully below, the lack of specifics in the Trustee's papers alone should preclude the relief he seeks.

---

[2] Hunsicker has filed her *Defendant's Motion to Reopen Case, Vacate Default and Final Default Judgment and Quash Service of Process* (the "**Vacatur Motion**") in the Florida Action (defined below), to which KSV has filed an opposition.  This motion is scheduled to be heard on October 14, 2025.  KSV does not believe the outcome of the hearing on this motion directly impacts the Court's consideration of the instant matter.

The Trustee's passing argument regarding potential preclusive effects of the Florida action is similarly misplaced. Neither res judicata nor collateral estoppel apply to the Trustee (or the Debtor's estate) vis-a-vis the Florida Action and/or the Florida judgment. The Florida Action and any claims *yet to be brought* by the Trustee would not involve the same parties or their privies, nor could such claims be based on the same cause of action. As set forth herein, KSV's claims are direct claims belonging to KSV, and KSV alone, and are not the same claims the Trustee would bring derivatively. For the same reasons, the Trustee's potential claims do not present identical issues, actually litigated, or a party (the Trustee or the Debtor's estate) having been fully represented in the Florida Action.

At its core, the Florida Action is a two-party dispute between non-debtors that has little to nothing to do with the administration of the Debtor's estate. KSV chose a proper forum to litigate its grievances with Hunsicker -- the Florida Circuit Court. KSV's claims are direct as against Hunsicker and do not implicate the Debtor's chapter 7 estate, nor will (or does) the Florida Action have a preclusive effect on any Trustee claims against Hunsicker and/or the Debtor's directors and officers.

## Nature and Stage of Proceedings

**A.     The Florida Action.**

KSV filed its *Complaint and Demand for Jury Trial* in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, initiating Case No. 50-2025-003703-MB (the "**Florida Action**") This action seeks to remedy Hunsicker's deceitful and fraudulent acts against KSV and includes claims for fraud in the inducement and breaches of her fiduciary duty and other misconduct which have caused KSV significant damages, as well as reputational and other harms.

On August 19, 2025, the Florida Circuit Court entered *Final Judgment After Default* against Hunsicker (the "**Florida Judgment**"), which judgment provided that:

KSV-I shall recover from Hunsicker, the sum of **TEN MILLION, FIVE HUNDRED ELEVEN THOUSAND, SIXTY-FOUR DOLLARS AND FIFTY-TWO CENTS** ($10,511,064.52) plus pre-judgment interest up to the date of the Affidavit of John Ritacco in support of the Motion in the amount of **ONE MILLION, ONE HUNDRED SIXTY-ONE THOUSAND, FOUR HUNDRED FORTY-EIGHT DOLLARS AND FORTY NINE CENTS** ($1,161,448.49), plus pre-judgment interest accruing at a rate of **TWO THOUSAND, SIX HUNDRED EIGHTY TWO DOLLARS AND THIRTY THREE CENTS** ($2,682.33) **PER DAY** from the date of the Affidavit of John Ritacco until entry of this Final Judgment After Default as damages, for which let execution issue forthwith.

KSV-II shall recover from Hunsicker, the sum of **THIRTY-SIX MILLION, EIGHT HUNDRED SIXTY-FOUR THOUSAND, SEVEN HUNDRED SIXTY-THREE DOLLARS AND SEVENTY-SEVEN CENTS** ($36,864,763.77) plus pre-judgment interest up to the date of the Affidavit of John Ritacco in support of the Motion in the amount of **TWO MILLION, NINE HUNDRED FIFTEEN THOUSAND, THREE DOLLARS AND SEVENTY-EIGHT CENTS** ($2,915,003.78), plus pre-judgment interest accruing at a rate of **NINE THOUSAND, FIVE HUNDRED FIFTY-EIGHT DOLLARS AND SEVENTY-EIGHT CENTS** ($9,558.78) **PER DAY** from the date of the Affidavit of John Ritacco until entry of this Final Judgment After Default as damages, for which let execution issue forthwith

The Florida Judgment further provided that "This Final Judgment After Default will bear interest at the statutory rate provided for judgments under Section 55.03, Florida Statutes, from the date of entry of this judgment." and that "KSV is entitled to their attorneys' fees and costs under Section 517.301, Florida Statutes, the amount of which KSV may seek by further motion."

**B.      The CaaStle, Inc. Chapter 7 Filing.**

On June 20, 2025 (the "**Petition Date**"), the Debtor filed for voluntary relief under chapter 7 of the Bankruptcy Code.  George L. Miller was appointed as the Trustee for the Debtor's chapter 7 bankruptcy estate.

## **Argument**

I.  **While this Court has Jurisdiction, Generally, to Enforce the Automatic Stay, it Does Not Have Jurisdiction Over Two Non-Debtors, or Litigation Between Two Non-Debtors.**

KSV does not disagree that this Court has jurisdiction to enforce the automatic stay, but only if it applies. This Court does not have jurisdiction, however, over claims between two non-Debtors, pending in another court of competent jurisdiction, which claims do not implicate the Debtor's estate (and, therefore, the automatic stay).

Bankruptcy jurisdiction extends to four types of matters: (1) cases under title 11 of the U.S. Code; (2) proceedings arising under title 11; (3) proceedings arising in a bankruptcy case; and (4) proceedings related to a bankruptcy case. *In re Exide Techs.*, 544 F.3d 196, 205 (3d Cir. 2008). Cases under title 11, proceedings arising under title 11 and proceedings arising in a bankruptcy case are core proceedings, while proceedings related to a case under title 11 are noncore proceedings. *Id.*

The Florida Action falls into none of the aforementioned categories and, therefore, falls outside this Court's jurisdiction. The Florida Action is not a case under title 11, does not arise under title 11, and is not a proceeding arising in a bankruptcy case. Nor does the Florida Action, which, as set forth below, only involves direct claims by KSV against Hunsicker and not claims belonging to the Debtor's estate, relate to this chapter 7 case.

II.  **KSV's Claims are Direct Claims, and Do Not Belong to the Chapter 7 Estate.**

The Trustee's primary argument in favor of staying the Florida Action is that the claims are property of the estate because the Complaint "is based on alleged misrepresentations made by Hunsicker to induce Defendants to invest in the Debtor" and because the "KSV Complaint asserts claims based upon alleged breaches of fiduciary duties as CEO and a board member of the

Debtor….” (Br. at 6, 7). However, all of these claims are individual, direct claims arising out of fraud perpetuated specifically on KSV or duties owed directly to KSV and, as a result, belong to KSV, not the Debtor's estate.

The Third Circuit established an elements test for determining whether a cause of action is property of the estate. Those elements are: (1) “the claim [must have] existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf under state law,” and (2) the claim is “a general one, with no particularized injury arising from it.” *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014).

If either of these elements is not met, the claim belongs to the individual claimant. *Id.*; *see also In re Aliera, Inc.*, 2025 WL 2091090, at *6 (Bankr. D. Del. July 24, 2025). The focus here is “not on individual injury but on whether the conduct that gives rise to the alleged liability was directed at a particular creditor” rather than at the debtor. *Aliera*, 2025 WL 2091090, at * 6 (citing *In re TPC Group, Inc.*, 2023 WL 2168045, at * 7 (Bankr. D. Del. Feb. 22, 2023)).

All of KSV's claims are direct and unique to KSV. The Complaint includes five counts. Count I for Fraudulent Inducement is based on allegations that Hunsicker falsified financial documents shared with KSV and made other unique misrepresentations, including how KSV's investments were specifically going to be used, with the intent to materially misrepresent the financial success of CaaStle and induce KSV to invest. Count II for Negligent Misrepresentation asserts that Hunsicker made knowingly false representations to KSV regarding CaaStle's financial state, how she was going to use KSV's funds, and that CaaStle's financial statements had been audited by an independent auditor when they were not, all with the intent to induce KSV into relying on the misrepresentations when deciding to invest into CaaStle. Counts III and IV allege claims for breaches of fiduciary duty against Hunsicker in her capacity as CEO and a board

member of CaaStle, and are based on allegations that Hunsicker breached her fiduciary duty of disclosure when she knowingly, intentionally, and in bad faith lied to KSV regarding how KSV's October 2024 investment was going to be spent to induce KSV to invest additional funds, and that Hunsicker breached her fiduciary duty of loyalty to KSV when she violated the law and committed fraud by falsifying financial records to induce KSV into making additional investments in CaaStle. Count V alleges violations of Sections 517.211 and 517.301, Florida Statute—Securities Fraud, and alleges that Hunsicker made false statements of material fact that were made in connection with the offer and sale of an investment or security, in order to induce KSV to invest substantial sums into CaaStle.

Counts I and II specifically allege that Hunsicker made representations directly to KSV in order to "induce *KSV* to invest in CaaStle," and that, "[a]s a result of these egregious material misrepresentations and omissions, *KSV invested* in CaaStle…." (Compl. ¶3) These are clearly claims that are specific to KSV, the recovery from which would flow directly to KSV, not the Debtor or the Debtor's estate. *See, e.g.*, *In re R.E. Loans LLC*, 519 B.R. 499, 507-08 (Bankr. N.D. Tex. 2014) (finding claims for violation of state securities laws for inducing investors to participate in exchange offer were direct, not derivative, and refusing to enjoin party from prosecuting those claims, and that "inducement claims" are "direct, not derivative claims"); *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 586 (5th Cir. 2008) (claims for conspiracy to defraud based on allegations that defendants made material misrepresentations to induce potential investors was a "direct injury" independent of any injury to the debtor, and were not the property of the bankruptcy estate). For these reasons, the claims for securities fraud, fraudulent inducement, and negligent misrepresentation are indisputably direct claims belonging to KSV, and not to the Debtor's estate.

KSV's claims for breach of fiduciary duty against Hunsicker in her capacity as a director and officer are also direct claims that belong to KSV. The claims allege that Hunsicker breached her duties to KSV when she falsified financial information "to induce KSV into making additional investments in CaaStle" (Compl. ¶67) and "breached her fiduciary duty of disclosure when she knowing, intentionally, and in bad faith lied to KSV … to induce KSV to invest additional funds" (*id.* ¶68).

Under Delaware law, "disloyal conduct" through "purposefully and materially misleading disclosures" gives rise to "individual claims," not derivative claims. *In re MultiPlan Corp. Stockhoders Litig.*, 268, A.3d 784, 803-04 (Del. Ch. 2022). *See also In re Ebix, Inc. Stockholder Litig.*, 2014 WL 3696655, at *16 (Del. Ch. July 24, 2014) ("These disclosure-based fiduciary duty claims are direct claims."); *Albert v. Alex Brown Mgm't Servs., Inc.*, 2005 WL 2130607, at *12-13 (Del. Ch. Aug. 26, 2005) ("Generally, non-disclosure claims are direct claims" and noting that damages for such claims would be awarded to equity holders, not the corporation); *Freedman v. Adams*, 2012 WL 1345638, at *16 n.154 (Del. Ch. Mar. 30, 2012) ("[D]isclosure claims are generally direct claims of the corporation's shareholders."). [3]

Thus, KSV's claims for breach of fiduciary duty against Hunsicker for misleading KSV in violation of her duty of disclosure and duty of loyalty are direct claims that belong to KSV, and not to the Debtor's estate.

## III.    The Automatic Stay Does Not Apply to the Florida Action.

As set forth above, KSV's claims against Hunsicker are direct, not derivative. Because

---

[3] The Trustee's citation to *In re Midway Games Inc.*, 428 B.R. 303 (Bankr. D. Del. 2010), does not change the analysis. There, the Court did not engage in any detailed analysis of whether the breach of fiduciary duty claims at issue – which related to allegations that directors breached their fiduciary duties by accepting debt from the company's controlling stockholder -- were direct or derivative. Notably, there, the breach of fiduciary duty claims were asserted by the Official Committee of Unsecured Creditors and were pleaded as derivative claims, not direct claims.

these direct claims are not property of the Debtor's estate, the automatic stay, by its very terms, is not implicated. Nor has any party filed a request to extend the automatic stay to Hunsicker or the Florida Action.

As the Court noted in *In re Extraction Oil & Gas, Inc.*, "[i]t is a tenet of bankruptcy law that the automatic stay provisions of § 362 of the Bankruptcy Code apply only to debtors and do not prevent litigation from proceeding against nondebtors." 2020 WL 7074142, at *4 (Bankr. D. Del. Dec. 3, 2020); *see also In re American Film Technologies, Inc.*, 175 B.R. 847, 850 (Bankr. D. Del. 1994) (the automatic stay "affords protection only to debtors and does not extend to 'co-torteasors,' 'joint obligors,' 'guarantors,' 'sureties,' or other non-debtor 'co-defendants.'"); *Maritime Electric Co. Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991) ("The automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor.").

The Trustee's Motion is not dissimilar, in effect, from a motion to extend the automatic stay to a third party, a motion often seen by this Court. As Judge Walrath noted, and quoted, in *In re Uni-Marts, LLC*:

> The broader rule here is that a debtor's stay may extend to a non-debtor only when necessary to protect the debtor's reorganization. The threatened harm may be to needed debtor funds (e.g., when non-debtors are entitled to indemnification) or personnel (e.g., when debtor needs the services of non-debtors facing crushing litigation). The question is whether the action against the non-debtor is sufficiently likely to have a "material effect upon ... reorganization effort[s]," that debtor protection requires an exception to the usual limited scope of the stay.

405 B.R. 113, 127 (Del. Bankr. 2009) (quoting *Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y. 1999)). None of these concerns are applicable here, particularly in a liquidating chapter 7 where there is no reorganization to protect. The Trustee does not contend otherwise or present any evidence to support his arguments.

## IV. The Florida Litigation Will Not Have a Preclusive Effect on Any Chapter 7 Trustee Claims.

With virtually no elaboration, no application of the relevant legal standards, and failing to identify a single preclusive finding (or potentially preclusive finding) from the Florida Action, which has now reached the judgment stage against Hunsicker, the Trustee argues that "[t]he <u>potential</u> preclusive effect means the Trustee <u>may</u> be imperiled by findings in the Florida Litigation … <u>may</u> be inhibited from fully pursuing Hunsicker and the other directors and officers of the Debtor. Thus, as a matter of Delaware law, the Florida Litigation's preclusive effect on the Trustee violates the automatic stay." <u>Trustee's Memorandum</u> at p. 8. (emphasis added).

"Federal law of claim preclusion [res judicata] requires a defendant to demonstrate that there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991). Issue preclusion, or collateral estoppel, requires that "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995). The Trustee cannot (and does not attempt to) satisfy either test.

The Florida Action and any claims that may be brought someday by the Trustee against Hunsicker or the Debtor's other directors and officers by definition do not involve the same parties or their privies, nor are such claims based on the same cause of action. As set forth herein, KSV's claims are direct, and are not the same claims the Trustee would bring derivatively on behalf of creditors or direct on behalf of the estate. Likewise, the Trustee's potential claims do not present

10

identical issues, actually litigated, or a party (the Trustee or the Debtor's estate) having been fully represented in the Florida Action.[4]

## V. The Court Can Fashion an Appropriate Remedy to the Extent there are Competing Claims to Insurance Proceeds.

The Trustee has asserted that hypothetical claims may exist against the D&O policy proceeds, and that he may assert claims against Hunsicker at a future date. This is not enough to bring the proceeds within the Debtor's estate.

In determining whether the proceeds of a liability insurance policy are property of the estate, courts review the "language and scope of the specific policies at issue." *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010). Moreover, the prevailing "question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep the proceeds when the insurer paid on a claim." *In re Pelullo*, 1991 WL 773509 (E.D. Pa. Sept. 30, 1999).

Although insurance policies are considered property of the estate and covered by the automatic stay provisions of section 362(a)(3) of the Bankruptcy Code, the proceeds of a policy are evaluated separately from the debtor's interest in the policy itself. *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 511 (Bankr. D. Del. 2004); *see also In re Cont'l Airlines*, 203 F.3d 203, 216 (3d Cir. 2000) (stating that the ownership of an insurance policy does not necessarily entail

---

[4] The Trustee's reliance on *SN Liquidation, Inc.*, 388 B.R. 579 (Bankr. D. Del. 2008), and as cited therein, *American Film Technologies*, 175 B.R. 847 (Bankr. D. Del. 1994) is not warranted here. Specifically, the Court in *American Film Technologies* relied upon "the identity of subject matter, issues and parties involved, the California case squarely implicates AFT's indemnification obligations and exposes it to collateral estoppel prejudice if it does not participate in that case." This case does not present identity of subject matter or parties.

In addition, while Second Circuit in *Queenie, Ltd. v. NYGARD Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003), did not reference either of these authorities, it did voice a concern that "… application of the stay [by virtue of apprehension of the application of offensive collateral estoppel against a debtor would result in] vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants." KSV submits the Second Circuit's concern is similarly applicable here.

ownership of the proceeds of that policy (citing *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir. 1993))).

In *Allied Digital*, the Court held that:

> The Court concludes that when a debtor's liability insurance policy provides direct coverage to the debtor the proceeds are property of the estate, because the proceeds are payable to the debtor. Further when the liability insurance policy only provides direct coverage to the directors and officers the proceeds are not property of the estate. However, when there is coverage for the directors and officers and the debtor, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution. Lastly, when the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate.

*In re Allied Dig. Techs. Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004); *accord SN Liquidation, Inc. v. Icon Int'l, Inc. (In re SN Liquidation, Inc.)*, 388 B.R. 579, 584 (Bankr. D. Del. 2008); *Miller v. McDonald (In re World Health Alts., Inc.)*, 369 B.R. 805, 811 (Bankr. D. Del. 2007).

The applicable policy[5] does provide coverage both to Hunsicker and the Debtor. However, no claims have been asserted either by creditors or the Trustee which would implicate the policy. To the extent the Court finds that there are (or will be) overlapping rights to insurance proceeds, it or the parties can fashion a solution to include an appropriate allocation of the parties' relative rights thereto without unduly prejudicing either party's rights.

## VI. Injunctive Relief is Not Warranted.

This Court has held that the request to extend the stay to non-debtor third parties amounts to seeking a preliminary injunction. *See American Film*, 175 B.R. at 850. The issuance of a preliminary injunction is considered "an extraordinary remedy" that "should be granted only in

---

[5] True and correct copies of the policies are attached hereto as <u>Exhibit C</u>.

limited circumstances." *In re DBSI, Inc.*, 409 B.R. 720, 731 (Bankr. D. Del. 2009). The burden on a request for a preliminary injunction falls entirely on the Trustee, and the Trustee has not met his burden. For these reasons, and the reasons set forth above, the Trustee's request for injunction relief, whether under section 105(a) of the Bankruptcy Code or Bankruptcy Rule 7065 should be denied.

The Third Circuit has held that more than a risk of irreparable harm must be demonstrated, and the standard for injunctive relief requires a "clear showing of immediate irreparable injury," or a "presently existing actual threat." *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980). An injunction may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law. *Id.*

Turning to the applicable factors for injunctive relief, first, the Trustee does not have, and has not demonstrated, a likelihood of success on the merits. In order to obtain injunctive relief, the movant must demonstrate a "strong probability of success on the merits of the litigation." *In re Advanced Marketing Svcs., Inc.*, 360 B.R. 421, 426 (Bankr. D. Del. 2007). As explained above, KSV's claims are, standing alone, direct and do not belong to the Debtor's estate. The automatic stay does not, by its terms, apply to the Florida Action. Nor has the Trustee identified any claims he believes he has, rendering it impossible for KSV or the Court to consider even a hypothetical overlap (which is not sufficient for injunctive relief in any event).

Second, there is no risk of irreparable harm to the Trustee for at least two reasons. One, the claims asserted in the Florida Action do not belong to the Debtor's estate. Two, as previously noted, to the extent the Court finds that there are (or will be) overlapping rights to insurance proceeds, the parties or the Court can fashion a solution. The moving party must demonstrate

potential harm which cannot be redressed by a legal or an equitable remedy following a trial and preliminary injunction must be the only way of protecting the plaintiff from harm. *Id.* at 428. The Trustee has not met this standard.

Third, the balance of equities weighs in KSV's favor. In applying this factor, a court should consider whether granting the requested relief will result in greater harm to the party on whom it is imposed than its denial will have on the party who seeks it. *Id.* KSV would be further harmed by the Trustee's unwarranted intrusion into the Florida Action and is entitled to its day in court free of interference, which it has sought. KSV is entitled to rely on the Florida Judgment.

Fourth, and finally, nothing in the public interest would be served by a chapter 7 trustee's overreach into, and interference with, litigation between two non-debtors in another court of competent jurisdiction.

## Conclusion

WHEREFORE, KSV respectfully requests that this Court deny the Motion and grant such other and further relief as is just and proper.

Dated: October 16, 2025
      Wilmington, Delaware

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Dennis A. Meloro*
Anthony W. Clark (DE Bar No. 2051)
Dennis A. Meloro (DE Bar No. 4435)
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801
Tel: (302) 661-7000
anthony.clark@gtlaw.com
dennis.meloro@gtlaw.com

-and-

**GREENBERG TRAURIG, P.A.**

Joseph J. Mamounas
Adrian Nunez
Ketan Ganase
333 SE Second Avenue, Suite 4400
Miami, Florida 33131
Tel: (305) 579-0500
mamounasj@gtlaw.com
nuneza@gtlaw.com
ketan.ganase@gtlaw.com

*Counsel for KSV CaaStle Holdings LP and KSV CaaStle Holdings II LP*

# EXHIBIT A

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

KSV CAASTLE HOLDINGS L.P. and
KSV CAASTLE II HOLDINGS L.P.,

      Plaintiffs,

v.

CHRISTINE HUNSICKER,

      Defendant.

_____/

CASE NO.

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs KSV CaaStle Holdings LP ("KSV-I") and KSV CaaStle Holdings II LP ("KSV-II," and together with "KSV-I," "KSV" or "Plaintiffs") have been left with no recourse other than to sue Defendant Christine Hunsicker ("Hunsicker" or "Defendant") and allege:

## **INTRODUCTION**

1. KSV unwittingly and unfortunately finds itself a victim in the highly publicized and still unraveling multi-million-dollar fraud perpetrated by Hunsicker on investors in CaaStle Inc. ("CaaStle"), a fashion rental subscription service company she co-founded in 2011 as Gwynnie Bee and rebranded in 2018 to capture industry leading brands and retailers.

2. "CaaStle ha[s] raised over $530 million in venture capital, and its investors appear to be wiped out, in what would be one of the biggest startup frauds ever." Dan Primack, *Scoop: Fashion startup accuses founder of misconduct, after raising $534 million*, Axios (March 31, 2025), https://www.axios.com/2025/03/31/scoop-caastle-founder-hunsicker-misconduct.

3. Plaintiffs were misled and then embroiled in Hunsicker's fraud when she induced KSV to invest in CaaStle by, among other things, misrepresenting the financial condition of CaaStle: Hunsicker falsified financial records that overstated revenue by as much as 33-fold,

misrepresented EBITDA as being close to positive nine-figures when CaaStle's EBITDA was actually in the negative nine-figures, and falsely claimed CaaStle had hundreds of millions of dollars in liquidity when, in reality, it had less than $1 million in cash. As a result of these egregious and material misrepresentations and omissions, KSV invested in CaaStle in exchange for shares that today are worthless. KSV did not invest in a risky new company—it was misled through false financials and doctored reports into believing CaaStle was a powerhouse for growth.

4. This action seeks to remedy Hunsicker's deceitful and fraudulent acts against KSV and includes claims for fraud in the inducement and breaches of her fiduciary duty and other misconduct which have caused KSV significant damages, as well as reputational and other harms.

## PARTIES

5. Plaintiff KSV-I is, and was at all relevant times, a Delaware limited partnership with a principal place of business in Palm Beach County, Florida. At least one of KSV-I's limited partners is a New York domiciliary and at least one of KSV-I's limited partners is a New Jersey domiciliary.

6. Plaintiff KSV-II is, and was at all relevant times, a Delaware limited partnership with a principal place of business in Palm Beach County, Florida. At least one of KSV-II's limited partners is a New York domiciliary and at least one of KSV-II's limited partners is a New Jersey domiciliary.

7. Defendant Hunsicker is an individual and resident of New York, New York and/or LaFayette, New Jersey.

**JURISDICTION AND VENUE**

8.     This Court has jurisdiction.  This claim seeks damages in excess of $50,000.00, exclusive of interest, costs, and attorneys' fees.

9.     This Court has personal jurisdiction over Hunsicker under Section 48.193, Florida Statutes, because she committed tortious acts in Florida, including making material misrepresentations to Plaintiffs in Florida, owed fiduciary duties to KSV as CaaStle shareholders in Florida, sent communications to KSV in furtherance of her tortious acts which were received by KSV in Florida, and lastly, as a result of her conduct, caused KSV to suffer harm and the consequences of Hunsicker's tortious acts in Florida.

10.    Venue is proper in this circuit because the causes of action set forth below arose in Palm Beach County.  As well, in addition to the facts giving rise to personal jurisdiction, venue is proper in this circuit because most of the relevant documents and other evidence are here.

11.    All conditions precedent to filing this lawsuit have been performed, occurred, waived, or otherwise satisfied.

**FACTUAL ALLEGATIONS**

**A.     KSV's Investments in CaaStle.**

12.    Hunsicker presented herself as a seasoned American retail executive with a proven track record in the fashion industry, including through the founding of successful ecommerce companies.

13.    Hunsicker formed CaaStle in 2018, as a data technology and logistics company meant to enable retail clothing customers to optimize their inventory monetization through ecommerce and rental capabilities.  At all relevant times, Hunsicker was the CEO and a board member of CaaStle.

14. Through a series of meetings in 2024, Hunsicker approached KSV, which is located in Palm Beach County, Florida, seeking to secure funding for CaaStle in several investment rounds.

15. At and following those meetings, Hunsicker shared with KSV "audited" financial statements for 2022 and 2023 and projections for 2024 and 2025 that showed CaaStle to be incredibly profitable, flush with cash, and on an upward trajectory. She shared those financial statements and other materials related to CaaStle with KSV through a shared data room and via emails at various intervals, starting around March 12, 2024, and continuing through March 2025.

16. For example, on April 22, 2024, Hunsicker shared through email falsified financials of Q1 2024 results. On August 20, 2024, she did the same thing for Q2 2024.

17. On September 24, 2024, Hunsicker represented through what she described as audited consolidated financial statements that CaaStle's fiscal 2022 revenue was $238 million and 2023 revenue was $439 million. Hunsicker also represented that CaaStle's EBITDA was $91 million for 2023 and projected that CaaStle's revenue for 2024 and 2025 would be $793 million and around $1 billion, respectively.

18. Relying on Hunsicker's purported track record in the fashion and ecommerce industries, CaaStle's alleged audited financial records, and other representations Hunsicker shared with KSV, including Hunsicker's representations regarding the profitability of each of CaaStle's lines of business, KSV saw an investment in CaaStle as a low-risk and lucrative opportunity.

19. Ultimately, KSV invested significant funds in CaaStle through one investment made by KSV-I in May 2024 and two investments made by KSV-II in September and October 2024. Both KSV-I and KSV-II were issued stock in CaaStle in exchange for the investments.

20.     Before Hunsicker's ploy unraveled, she continued to solicit additional investments from unsuspecting KSV by making blatantly false representations to KSV.  For example, on a video call in December 2024 between Hunsicker and KSV (the "Video Pitch"), Hunsicker walked KSV through CaaStle's business model and represented that all of CaaStle's lines of business (enterprise rental, branded affiliates, and ecommerce optimization) were profitable.  On that Video Pitch, Hunsicker represented that CaaStle's "balance sheet had a lot of cash on it, and very little of everything else . . .  [CaaStle] is stockpiling cash. . . . [CaaStle] ha[s] several hundred million in the bank."  These statements are consistent with prior representations Hunsicker had made to KSV in May 2024 prior to the initial investments.

21.     Moreover, after KSV's May and September 2024 investments and to induce the October 2024 investment, Hunsicker represented to KSV that its further investment would be used to buy out the common shares of Hunsicker's co-founder, JP Singh.  The net result, a reduction in CaaStle's total common shares, was particularly enticing to KSV.

22.     Because of her positions as the CEO and a board member of CaaStle, Hunsicker owed fiduciary duties to KSV as a shareholder of CaaStle.  Hunsicker breached her duties to KSV, both misrepresenting and concealing material information and misleading KSV both before and after it placed its investments in her hands.

**B.      The March 29, 2025 CaaStle Shareholder Letter.**

23.     With no notice, on March 29, 2025, the floor dropped from under KSV's investments.  KSV received a letter from CaaStle's board (the "Shareholder Letter") stating that Hunsicker provided "investors with misstated financial statements and falsified audit opinions, as well as capitalization information that understated the number of [CaaStle] shares outstanding."

24.     The Shareholder Letter also informed shareholders that Hunsicker was being investigated by law enforcement authorities in connection with providing certain investors with falsified financial and capitalization information.

25.     The Shareholder Letter went on to state that Hunsicker had resigned from her position as CEO of CaaStle earlier in the week of March 24, 2025, and had also stepped down from CaaStle's board.

26.     The Shareholder Letter warned investors that they could not rely on any financial or capitalization information received from Hunsicker in the past—it was all falsified.

27.     And, notwithstanding Hunsicker's representations that CaaStle was sitting on "hundreds" of millions of dollars in cash, the Shareholder Letter warned that CaaStle was facing "a severe and immediate liquidity problem" and the board was "evaluating . . . a possible wind down, liquidation, or strategic transaction."

**C.     Hunsicker's Lies.**

28.     The Shareholder Letter appended to it what was referred to as "actual audited results for fiscal years 2023 and 2022" (the "Audited Financials"). The Audited Financials show the scope of Hunsicker's lies.

29.     For fiscal year 2022, the Audited Financials show that CaaStle's revenue was not $238 million, as Hunsicker previously had represented to KSV, but rather $19.7 million.

30.     For fiscal year 2023, the Audited Financials show that CaaStle's revenue was not $439 million, as Hunsicker previously had represented to KSV, but rather $15.7 million.

31.     While Hunsicker represented that CaaStle's EBITDA was flat for 2022 and $91 million for 2023, the Audited Financials show this was impossible because there was a combined net loss of $136 million for 2022 and 2023.

32.     While Hunsicker represented to KSV that CaaStle had "hundreds of millions of dollars in cash," the Audited Financials show that it ended its fiscal year 2023 with less than $1 million in cash and only just $3 million in total current assets.

33.     After receiving the Shareholder Letter, KSV learned that Hunsicker not only had falsified the figures in the various financial statements she had shared with KSV, but she also falsified the fact the financial statements had been prepared and audited by BDO USA P.C. ("BDO"), going as far as forging BDO's letterhead and including a fictitious BDO "Independent Auditor's Report."

34.     Moreover, while Hunsicker told KSV that all of CaaStle's lines of business were profitable, CaaStle represented during the investor meetings that followed the Shareholder Letter that *only one* of CaaStle's lines of business was profitable—its ecommerce optimization line—the others were hemorrhaging money.

35.     Also, Hunsicker never used KSV's October 2024 investment funds to buy out JP Singh's common shares.  Upon information and belief, JP Singh still holds some or all of his common shares in CaaStle.

36.     Finally, Hunsicker used some or all of the funds from KSV's investments in CaaStle in personal transactions, including transactions involving other companies in which she had a financial interest in, including P180, Inc., a company she cofounded and on whose board she sat.  This was not a case of business missteps—it was a meticulously orchestrated deception, engineered to attract funding and inflate valuation at the expense of truth and fiduciary responsibility.

### COUNT I
**(Fraudulent Inducement)**

37.     KSV re-alleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

38.     Hunsicker both stated to KSV and represented to KSV in falsified financial records that (1) CaaStle's revenue for 2022 was $238 million; (2) that CaaStle's revenue for 2023 was $439 million; (3) that CaaStle was projecting revenue of $793 million and around $1 billion for 2024 and 2025, respectively; (4) that CaaStle's EBITDA was $91 million for 2023 and flat for 2022; (5) that CaaStle had "hundreds of millions of dollars in cash"; and (6) that these financial records were "audited" financial statements.

39.     Hunsicker falsified financial documents shared with KSV, including those shared on September 24, 2024, and during various meetings and calls with KSV, starting on March 12, 2024, through March 2025, with the intent to materially misrepresent the financial success of CaaStle and induce KSV to invest.

40.     Hunsicker's representations to KSV were false when made because none of the financial metrics stated above is accurate:  (1) CaaStle's revenue for 2022 was $19.7 million; (2) CaaStle's revenue for 2023 was $15.7 million; (3) no projection contemplated CaaStle's revenue to be $793 million and around $1 billion for 2024 and 2025, respectively; (4) CaaStle's EBITDA could not be $91 million for 2023 and flat for 2022 because there was a combined net loss of $135 million for 2022 and 2023; and (5) CaaStle ended its fiscal year 2023 with less than $1 million in cash and only just $3 million in total assets.

41.     Moreover, to induce KSV's October 2024 investment, Hunsicker knowingly misrepresented that she was going to use KSV's investment to buy out JP Singh's common shares—Hunsicker never did.  She also knowingly misrepresented the accuracy of the purported CaaStle financial statements she presented to KSV claiming they were audited by a neutral auditor when they were not.

42. Hunsicker's misrepresentations were material because they were the factors subject to which KSV decided to invest in CaaStle. Neither KSV nor a reasonable person would have entered into this transaction and invested in CaaStle if Hunsicker had not made the misrepresentations and presented the actual financial condition of the business.

43. When Hunsicker made the misrepresentations to KSV, she knew each of these representations was false. Indeed, she had falsified the financial records herself.

44. When Hunsicker made the misrepresentations, her intent was to induce KSV into investing substantial sums of money in CaaStle.

45. KSV relied on Hunsicker's misrepresentations in deciding whether to invest in CaaStle and chose to invest as a direct and immediate result of the falsified financial figures and other information Hunsicker shared with KSV.

46. KSV conducted its own reasonable due diligence into Hunsicker's statements, but, because CaaStle is a private company, KSV was limited in publicly available information and could only obtain its financial records directly from CaaStle, which Hunsicker provided and represented to be audited by an independent auditor, BDO. And while having to rely on Hunsicker's disclosures, KSV had no other public means by which to test or question the financial information provided including when Hunsicker misrepresented that CaaStle's financial records had been prepared and audited by a neutral, reputable accounting firm when they in fact had not.

47. At no point did KSV suspect that Hunsicker, a well-known and well-regarded retail executive whose startup had grown in notoriety, was falsely representing the financial state of CaaStle to lure investors, such as KSV, into making significant capital contributions. Nor did KSV suspect that she had falsified the financial statements to give them the appearance of having been prepared, verified, and ratified by a neutral auditor.

48.     As a result of KSV's reliance on Hunsicker's misrepresentations inducing KSV into investing in CaaStle, KSV has suffered damages.

49.     Hunsicker's fraudulent inducement, inducing KSV reliance, was the direct and proximate cause of KSV's loss.

WHEREFORE, KSV demands judgment against Hunsicker for damages, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## COUNT II
### (Negligent Misrepresentation)

50.     KSV re-alleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

51.     Hunsicker both stated to KSV and represented to KSV in falsified financial records that (1) CaaStle's revenue for 2022 was $238 million; (2) that CaaStle's revenue for 2023 was $439 million; (3) that CaaStle was projecting revenue of  $793 million and around $1 billion for 2024 and 2025, respectively; (4) that CaaStle's EBITDA was $91 million for 2023 and flat for 2022; (5) that CaaStle had "hundreds of millions of dollars in cash" as of May 2024; and (6) that these financial records were "audited" financial records.

52.     Hunsicker made these representations through falsified financial records shared with KSV, including on September 24, 2024, and during various meetings and calls with KSV, starting on March 12, 2024, through March 2025.

53.     Hunsicker's representations were false when made, because none of the financial metrics stated above is accurate:  (1) CaaStle's revenue for 2022 was $19.7 million; (2) CaaStle's revenue for 2023 was $15.7 million; (3) no projection contemplated CaaStle's revenue to be $793 million and around $1 billion for 2024 and 2025, respectively; (4) CaaStle's EBITDA could not be $91 million for 2023 and flat for 2022 because there was a combined net loss of $135 million

for 2022 and 2023; (5) CaaStle ended its fiscal year 2023 with less than $1 million in cash and only just $3 million in total assets; and (6) the financial records were not audited.

54.     Moreover, to induce KSV's October 2024 investment, Hunsicker knowingly misrepresented how she was going to use KSV's funds—to buy out JP Singh's common shares— and CaaStle's financial statements as having been audited by a neutral auditor when they were not.

55.     Hunsicker's misrepresentations were material because they were the factors subject to which KSV decided to invest in CaaStle. Neither Plaintiffs nor a reasonable person would have entered into this transaction and invested in CaaStle if Hunsicker had not made the misrepresentations.

56.     Hunsicker had a pecuniary interest in the transaction with KSV because she stood to personally profit from KSV's investment, either directly or indirectly.

57.     Hunsicker was negligent in making the statement. Hunsicker knew that the misrepresentations were false when made.

58.     KSV relied on Hunsicker's misrepresentations in deciding whether to invest in CaaStle and chose to invest as a direct and immediate result of the falsified financial figures and information Hunsicker shared with KSV.

59.     KSV conducted its own due diligence into Hunsicker's statements, but, because CaaStle is a private company, KSV was limited in publicly available information and could only obtain its financial records directly from CaaStle, which Hunsicker provided. And while having to rely on Hunsicker's disclosures, KSV had no other means by which to test or question the financial information provided including when Hunsicker misrepresented that CaaStle's financial records had been audited by a neutral accounting firm when they in fact had not.

60.     At no point did KSV suspect that Hunsicker, a well-known and well-regarded retail executive whose startup had grown in notoriety, was falsely representing the financial state of CaaStle to lure investors, such as KSV, into making significant capital contributions.

61.     Hunsicker intended to induce KSV to rely on her misrepresentations, which KSV did rely upon to make its investment decisions in CaaStle.

62.     As a result of KSV's reliance on the Hunsicker's misrepresentations, KSV was induced to invest in CaaStle due to the Hunsicker's misrepresentation, as a result of which, KSV suffered significant damages.

63.     Hunsicker's misrepresentations, inducing KSV's reliance, were the direct and proximate cause of the KSV's loss.

WHEREFORE, KSV demands judgment against Hunsicker for damages, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## <u>COUNT III</u>
### (Breaches of Fiduciary Duties Against Hunsicker as a Board Member)

64.     KSV re-alleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

65.     Hunsicker, as a board member of CaaStle, owed a fiduciary duty of loyalty to KSV as a shareholder of CaaStle.

66.     Hunsicker breached her fiduciary duty of loyalty to KSV when she engaged in self-dealing.  Hunsicker used some or all the proceeds of KSV's investments in CaaStle almost immediately after receiving it in transactions involving other companies in which she had a financial interest and not for CaaStle.

67.     Hunsicker also breached her fiduciary duty of loyalty to KSV when she violated the law and committed fraud by falsifying financial records to induce KSV into making additional investments in CaaStle such that she could then divert KSV's funds into transactions aimed at

enriching herself and not directly related to CaaStle.

68.     Similarly, Hunsicker breached her fiduciary duty of disclosure when she knowingly, intentionally, and in bad faith lied to KSV regarding how KSV's October 2024 investment was going to be spent—to reduce the outstanding common shares—to induce KSV to invest additional funds so that Hunsicker could then use those funds for her self-interested purposes not directly related to CaaStle.

69.     The loss of the investments is a particularized and direct harm to KSV as the investment funds were not used for CaaStle but instead by Hunsicker for self-dealing and her personal gain, which is the direct and proximate cause of KSV's injury.

70.     As a result of Hunsicker's breaches of her fiduciary duty of loyalty and of disclosure, KSV has suffered and will suffer injury and is entitled to an award of damages.

WHEREFORE, KSV demands judgment against Hunsicker for damages, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## COUNT IV
### (Breaches of Fiduciary Duties Against Hunsicker as CEO)

71.     KSV re-alleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

72.     Hunsicker, as CEO of CaaStle, owed fiduciary duties of care and loyalty to KSV.

73.     Hunsicker breached her fiduciary duty of care to KSV when she failed to act as a reasonably prudent person and falsified financial records and misrepresented them to KSV and other investors and hid the fact that CaaStle was in financial distress.

74.     Hunsicker also breached her fiduciary duty of loyalty to KSV when she engaged in self-dealing.  Hunsicker used some or all the proceeds of KSV's investments in CaaStle almost immediately after receiving it in transactions involving other companies in which she had a financial interest in and not for CaaStle.

75.     Hunsicker also breached her fiduciary duty of loyalty to KSV when she violated the law and committed fraud by falsifying financial records to induce KSV into making additional investments in CaaStle such that she could then divert KSV's funds into transactions aimed at enriching herself and not directly related to CaaStle.

76.     Similarly, Hunsicker breached her fiduciary duty of disclosure when she knowingly, intentionally, and in bad faith lied to KSV regarding how KSV's October 2024 investment was going to be spent to induce KSV to invest additional funds so that Hunsicker could then use those funds for her self-interested purposes not directly related to CaaStle.

77.     The loss of the investments is a particularized and direct harm to KSV as the investment funds were not used for CaaStle but instead by Hunsicker for self-dealing and her personal gain, which is the direct and proximate cause of KSV's injury.

78.     As a result of Hunsicker's breaches of her fiduciary duties of care, loyalty, and disclosure, KSV has suffered and will suffer injury and is entitled to an award of damages.

WHEREFORE, KSV demands judgment against Hunsicker for damages, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## COUNT V
**(Violations of Sections 517.211 and 517.301, Florida Statute—Securities Fraud)**

79.     KSV re-alleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

80.     When courting KSV to invest in CaaStle, Hunsicker both stated to KSV and represented to KSV in communications and falsified financial records that (1) CaaStle's revenue for 2022 was $238 million; (2) that CaaStle's revenue for 2023 was $439 million; (3) that CaaStle was projecting revenues of $793 million and around $1 billion for 2024 and 2025, respectively; (4) that CaaStle's EBITDA was $91 million for 2023, and flat for 2022; (5) that CaaStle had "hundreds of millions of dollars in cash" as of May 2024; and (6) that these financial records were

"audited" financial records.

81. Hunsicker made these representations through falsified financial records shared with KSV, including on September 24, 2024, and during various meetings and calls with KSV, starting on March 12, 2024, through March 2025.

82. Hunsicker's representations were false because none of the financial metrics stated above is accurate: (1) CaaStle's revenue for 2022 was $19.7 million; (2) CaaStle's revenue for 2023 was $15.7 million; (3) no audited projection contemplated CaaStle's revenues to be $793 million and around $1 billion for 2024 and 2025, respectively; (4) CaaStle's EBITDA could not be $91 million for 2023 and flat for 2022 because there was a combined net loss of $135 million for 2022 and 2023; (5) CaaStle ended its fiscal year 2023 with less than $1 million in cash and only just $3 million in total assets; and (6) the financial records were not audited.

83. Moreover, to induce KSV's October 2024 investment, Hunsicker knowingly misrepresented how she was going to use KSV's funds—to buy out JP Singh's common shares—and CaaStle's financial statements as having been audited by a neutral auditor when they were not.

84. Hunsicker's misrepresentations were material because they were the factors subject to which KSV assessed the viability of its investments in CaaStle.

85. Hunsicker's misrepresentations were false statements of material fact that were made in connection with the offer and sale of an investment or security.

86. When Hunsicker made the misrepresentations, her intent was to induce KSV into investing substantial sums of money in CaaStle.

87. KSV relied on Hunsicker's misrepresentations in deciding whether to invest in CaaStle and chose to invest as a direct and immediate result of the falsified financial figures and other information Hunsicker shared with KSV.

88. As a result of Hunsicker's misrepresentations, KSV invested in CaaStle.

89. In exchange for KSV's investments in CaaStle, KSV received securities in CaaStle—both preferred and common stock. KSV's investments thus qualify as an "investment" or a "security" under Section 517.301(2), Florida Statutes.

90. However, the securities received by KSV are valueless due to Hunsicker's misconduct. Per the Shareholder Letter, CaaStle is facing "a severe and immediate liquidity problem" and the board is "evaluating . . . wind down, liquidation, or strategic transaction."

91. Thus, Hunsicker has engaged in unlawful conduct and violated Section 517.301, Florida Statutes.

92. Pursuant to Section 517.211, Florida Statutes, Hunsicker is liable to KSV for the recission of the sale of the securities or damages.

93. KSV is also entitled to an award of its attorneys' fees under Section 517.211(7), Florida Statutes.

WHEREFORE, KSV demands judgment against Hunsicker for recission, damages, pre- and post-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT VI
### (Unjust Enrichment)

94. KSV re-alleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

95. KSV had no contractual relationship with Hunsicker. Nonetheless, KSV conferred a benefit on Hunsicker through the funding of its investments when Hunsicker used those funds to personally benefit herself and not CaaStle.

96. Indeed, following KSV's investments in CaaStle in May, September, and October of 2024, Hunsicker knowingly retained the proceeds of KSV's investments in CaaStle for personal

uses, including personal transactions and investments, not related to CaaStle.

97.    Hunsicker voluntarily accepted and knowingly retained the benefit that KSV conferred on Hunsicker, notably, by keeping for herself the proceeds of KSV's investments in CaaStle and/or spending it in self-interested transactions unrelated to CaaStle.

98.    Under the circumstances, it would thus be unjust and inequitable to permit Hunsicker to retain the benefit of the funds she misappropriated without compensating KSV for it.

WHEREFORE, KSV demands judgment against Hunsicker for damages, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

KSV demands a trial by jury of all issues so triable.

Dated: April 18, 2025.                    Respectfully submitted,

                                          **GREENBERG TRAURIG, P.A.**
                                          333 S.E. 2nd Avenue, Suite 4400
                                          Miami, FL 33131
                                          Telephone: 305-579-0500
                                          Facsimile:  305-579-0717

                                          By: */s/ Joseph J. Mamounas*
                                              JOSEPH J. MAMOUNAS
                                              Florida Bar No. 41517
                                              mamounasj@gtlaw.com
                                              ADRIAN NUÑEZ
                                              Florida Bar No. 48176
                                              nuneza@gtlaw.com
                                              KETAN M. GANASE
                                              Florida Bar No. 1002331
                                              ketan.ganase@gtlaw.com

                                              *Attorneys for Plaintiffs* KSV CaaStle Holdings LP
                                              and KSV CaaStle Holdings II LP

# EXHIBIT B

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

KSV CAASTLE HOLDINGS L.P. AND    CASE NO.: 50-2025-003703-MB
KSV CAASTLE HOLDINGS II L.P.,

      Plaintiffs,

v.

CHRISTINE HUNSICKER,

      Defendant.

_____/

## FINAL JUDGMENT AFTER DEFAULT

**THIS MATTER** comes before the Court on Plaintiffs, KSV CaaStle Holdings L.P. ("KSV-I") and KSV CaaStle Holdings II L.P. ("KSV-II," together with "KSV-I," "KSV"), Motion for Entry of Final Judgment after Default ("Motion") against Defendant, Christine Hunsicker ("Defendant" or "Hunsicker"). The Court, having reviewed the Motion, KSV's supporting affidavit and documents, and being otherwise fully advised in the premises, finds as follows:

A.    This case arises from a multi-million-dollar fraud perpetrated by Hunsicker on investors in CaaStle Inc. ("CaaStle"), a company she co-founded. KSV-I, one such investor, invested a total of $10,511,064.52 in CaaStle to acquire Preferred Stock and Common Stock, relying on the Hunsicker's fraudulent statements regarding CaaStle's financial performance, all of which turned out to be false. KSV-II, another such investor, invested a total of $36,864,763.77 in CaaStle to acquire Preferred Stock and Common Stock, relying on the Hunsicker's fraudulent

statements regarding CaaStle's financial performance, all of which turned out to be false.

B.     On April 18, 2025, KSV filed a five-count Complaint for damages against Hunsicker for (1) Fraudulent Inducement; (2) Negligent Misrepresentation; (3) Breaches of Fiduciary Duties Against Hunsicker as a Board Member; (4) Breaches of Fiduciary Duties Against Hunsicker as CEO; and (5) Violations of Sections 517.211 and 517.301, Florida Statute—Securities Fraud.

C.     On April 21, 2025, the Defendant was personally served with a copy of the Summons and Complaint.

D.     Pursuant to Fla. R. Civ. P. 1.140, Hunsicker had twenty (20) days to respond to the Complaint.

E.     Despite proper service of process, Hunsicker failed to (a) deny KSV's allegations in the Complaint, (b) assert any affirmative defenses to KSV's claims, or (c) otherwise respond to the Complaint within the period required by the Florida Rules of Civil Procedure.

F.     On August 2, 2025, in response to KSV's Motion for Clerk's Default, the Clerk of the Court entered an Order of Default against Hunsicker.

G.     By virtue of Hunsicker's default, all well-pled allegations against her are deemed true.

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED**:

1.     The Motion is **GRANTED**.

2.     Final Judgment After Default for damages is hereby entered in favor of Plaintiffs, KSV-I and KSV-II, whose address is 222 Lakeview Avenue, Suite 800, West Palm Beach, FL 33401 and against Hunsicker (SSN 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), whose address is 15 Monroe Road, Lafayette, NJ 07848.

3. KSV-I shall recover from Hunsicker, the sum of **TEN MILLION, FIVE HUNDRED ELEVEN THOUSAND, SIXTY-FOUR DOLLARS AND FIFTY-TWO CENTS** ($10,511,064.52) plus pre-judgment interest up to the date of the Affidavit of John Ritacco in support of the Motion in the amount of **ONE MILLION, ONE HUNDRED SIXTY-ONE THOUSAND, FOUR HUNDRED FORTY-EIGHT DOLLARS AND FORTY NINE CENTS** ($1,161,448.49), plus pre-judgment interest accruing at a rate of **TWO THOUSAND, SIX HUNDRED EIGHTY TWO DOLLARS AND THIRTY THREE CENTS** ($2,682.33) **PER DAY** from the date of the Affidavit of John Ritacco until entry of this Final Judgment After Default as damages, for which let execution issue forthwith.

4. KSV-II shall recover from Hunsicker, the sum of **THIRTY-SIX MILLION, EIGHT HUNDRED SIXTY-FOUR THOUSAND, SEVEN HUNDRED SIXTY-THREE DOLLARS AND SEVENTY-SEVEN CENTS** ($36,864,763.77) plus pre-judgment interest up to the date of the Affidavit of John Ritacco in support of the Motion in the amount of **TWO MILLION, NINE HUNDRED FIFTEEN THOUSAND, THREE DOLLARS AND SEVENTY-EIGHT CENTS** ($2,915,003.78), plus pre-judgment interest accruing at a rate of **NINE THOUSAND, FIVE HUNDRED FIFTY-EIGHT DOLLARS AND SEVENTY-EIGHT CENTS** ($9,558.78) **PER DAY** from the date of the Affidavit of John Ritacco until entry of this Final Judgment After Default as damages, for which let execution issue forthwith.

5. This Final Judgment After Default will bear interest at the statutory rate provided for judgments under Section 55.03, Florida Statutes, from the date of entry of this judgment.

6. KSV is entitled to their attorneys' fees and costs under Section 517.301, Florida Statutes, the amount of which KSV may seek by further motion.

7.    It is further ordered and adjudged that Hunsicker shall complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all attachments and serve them on the Plaintiff's attorney at the address indicated below, within 45 days from the date of this final judgment, unless the Final Judgment is satisfied, or post-judgment discovery is stayed. Failure to complete and serve the Fact Information Sheet, including all required attachments, may be considered contempt of Court.

8.    This Court retains jurisdiction in this matter for issuance of such further orders, judgments, and relief as is necessary, including ordering Defendant to complete and serve form 1.977 and all required attachments, writs of possession, attachment or garnishment, and for an award of attorneys' fees and costs.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida.

502025CA003703XXXAMB    08/19/2025
Bradley G. Harper    Circuit Judge

502025CA003703XXXAMB    08/19/2025
Bradley G. Harper
Circuit Judge

_____

Honorable Bradley Harper
Circuit Court Judge

Copies to:

Joseph Mamounas, Esq.
Adrian Nuñez, Esq.
Ketan Ganase, Esq.
**GREENBERG TRAURIG, P.A.**
333 S.E. Second Avenue, 44th Floor
Miami, FL 33131
mamounasj@gtlaw.com
nuneza@gtlaw.com
ketan.ganase@gtlaw.com
anelis.sanchez@gtlaw.com
FLService@gtlaw.com

*Attorneys for Plaintiffs* KSV CaaStle Holdings L.P. and KSV CaaStle Holdings II L.P.

Christine Hunsicker
15 Monroe Road
Lafayette, NJ 07848

**EXHIBIT C**

**Filed Under Seal**