**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>CaaStle, Inc.<br><br>Debtor.<br><br>GEORGE L. MILLER, solely in his capacity as chapter 7 trustee for the bankruptcy estate of CaaStle, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>KSV CAASTLE HOLDINGS L.P., KSV CAASTLE HOLDINGS II L.P, and P180 Inc.<br><br>Defendants. | Chapter 7<br>Case No. 25-11187-BLS<br><br><br><br><br><br><br><br><br><br>Adv. Pro. No.: 25-52349-BLS |

**MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION FOR FURTHER INJUNCTIVE RELIEF UNDER SECTIONS 105(A) AND 362(A) OF THE BANKRUPTCY CODE AGAINST KSV DEFENDANTS**

**DILWORTH PAXSON LLP**

*/s/ Peter C. Hughes*

Peter C. Hughes (No. 4180)
800 N. King Street, Suite 202
Wilmington, DE 19801
Telephone:     302-571-9800
Facsimile:     302-571-8875
Email:          phughes@dilworthlaw.com

and

Peter C. Hughes
Jack Small
1650 Market St., Suite 1200
Philadelphia, PA 19103
Telephone:     (215) 575-7000
Facsimile:     (215) 754-4603
Email:          phughes@dilworthlaw.com
Email:          jsmall@dilworthlaw.com

Dated:  March 30, 2026                    *Attorneys for George L. Miller, Chapter 7 Trustee*

#125526734v5

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

Preliminary Statement.................................................................................................... 1

Relevant Procedural and Factual History .................................................................... 3

Argument ....................................................................................................................... 3

    I.    This Court has Jurisdiction to Grant the Requested Relief...........................................3

    II.   The Automatic Stay of Section 362(a) Compels an Extension of the Preliminary Injunction as to KSV...........................................................................................................................3

        a.    KSV Asserts Claims which Belong to the Estate ................................................3

        b.    KSV Seeks to Recover Assets Which Should Be Recovered by the Trustee for the Benefit of all Chapter 7 Creditors. .................................................................................6

    III.  The Standard for Injunctive Relief under Section 105(a) of the Bankruptcy Code is Satisfied...9

    IV.  In the Alternative, Issuance of a Preliminary Injunction under Rule 7065 of the Bankruptcy Rules is Appropriate. .......................................................................................................15

Conclusion ................................................................................................................... 15

#125526734v5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

23 F.3d 159, 162 (7th Cir. 1994).................................................................................................. 10

*In re Am. Film Techs., Inc.*,
    175 B.R............................................................................................................................... 15

*Am. Imaging Servs., Inc. v. Eagle-Picher Indus, Inc. (In re Eagle Picher Indus.)*,
    963 F.2d 855 (6th Cir. 1992) ................................................................................................ 9

*Am. Tel. & Tel. Co. v. Winback & Conserver Program, Inc.*,
    42 F.3d 1421 (3d Cir. 1994) ............................................................................................... 14

*Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*,
    269 F.3d 164 (3d Cir. 2002) ................................................................................................ 5

*Emoral, Inc. v. Diacetyl (In re Emoral, Inc.)*,
    740 F.3d 875 (3d Cir. 2014) ............................................................................................ 4, 5

*Fisher v. Apostolou*,
    155 F.3d 876 (7th Cir. 1998) ......................................................................................*passim*

*Koch Refining v. Farmers Credit Union Cent. Exch., Inc.*,
    831 F.2d 1339 (7th Cir. 1987) .............................................................................................. 4

*Krystal Cadillac Oldsmobile GMC Truck, Inc. v. GMC (In re Krystal Cadillac
    Oldsmobile GMC Truck, Inc.)*,
    142 F.3d 631 (3d Cir. 1998) ................................................................................................ 4

*In re L & S Indus., Inc.*,
    989 F.2d 929 (7th Cir. 1993) .............................................................................................. 10

*Maritime Electric Inc. v. United Jersey Bank*,
    959 F.2d 1194 (3d Cir. 1991) .............................................................................................. 4

*In re Midway Games Inc.*,
    428 B.R. 303 (Bankr. D. Del. 2010)..................................................................................... 5

*N.J. Dep't of Envtl. Prot. v. Occidental Chemical Corp. (In re Maxus Energy Corp.)*,
    571 B.R. 650 (Bankr. D. Del. 2017)................................................................................. 4, 5

*Oburn v. Sharp*,
    521 F.2d 142 (3d Cir. 1970) .............................................................................................. 11

*Punnett v. Carter*,
    621 F.2d 578 (3d Cir. 1980) .............................................................................................. 11

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017) ......................................................................................... 10, 11

ii

*Ride the Ducks of Phila., LLC v. Duck Boat Tours*,
  Inc., 138 Fed. App'x 431 (3d Cir. 2005) ................................................................ 11

*Shubert v. Premier Paper Prods., LLC (In re Am. Tissue, Inc.)*,
  No. 01-10370, 2006 WL 3498065 (Bankr. D. Del. Dec. 4, 2006) ......................... 14

*SN Liquidation, Inc.*, 388 B.R. at 583 ....................................................................... 11

*In re Stein*,
  314 B.R. 306 (D.N.J. 2004) ....................................................................................... 8

*In re W.R. Grace & Co.*,
  386 B.R. ..................................................................................................................... 14

*Zernand-Bernal Grp., Inc. v. Cox*,
  23 F.3d 159, 161-62 (7th Cir. 1994) .......................................................................... 8

**Statutes**

11 U.S.C. § 362(a)(1) ..................................................................................................... 4

11 U.S.C. § 362(a)(3) ..................................................................................................... 4

28 U.S.C. §§ 1334 and 157 ........................................................................................... 3

28 U.S.C. § 1334(b) and § 157(b)(2) ............................................................................ 3

Bankruptcy Code section 105(a) ......................................................................... 9, 10, 15

Bankruptcy Code section 362 .................................................................................... 5, 7

Bankruptcy Code section 362(a) ................................................................................ 3, 4

Commodities Exchange Act, Securities Acts of 1933 and 1934, RICO ....................... 7

section 105 ..................................................................................................................... 9

Section 541(a)(1) ........................................................................................................... 4

**Other Authorities**

Bankruptcy Rules Rule 7065 ....................................................................................... 15

Federal Rules of Civil Procedure Rule 65 .................................................................... 9

iii

George L. Miller, the plaintiff in this adversary and chapter 7 trustee (the "Plaintiff" or the "Trustee") of CaaStle Inc. ("CaaStle" or the "Debtor") in the above-captioned bankruptcy proceeding, respectfully submits this Memorandum of Law (the "Memorandum") in support of his motion (the "Motion"), pursuant to sections 105(a) and 362(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), to extend the injunctive relief entered on December 12, 2025 against Defendants KSV CaaStle Holdings L.P. ("KSV I") and KSV CaaStle Holdings II L.P. ("KSV II" and, with KSV I, "KSV"). The existing injunction bars KSV from proceeding against Christine Hunsicker ("Hunsicker") and other directors and officers of the Debtor.

## PRELIMINARY STATEMENT

The Trustee is compelled to request an extension of the preliminary injunction enjoining KSV's attempts to violate the automatic stay and position themselves ahead of other Chapter 7 creditors ("Chapter 7 Creditors"). KSV filed a complaint (the "KSV Complaint") against Hunsicker, the former CEO and board member of the Debtor, asserting claims that either belong to the Trustee in violation of the automatic stay imposed by section 362 of the Bankruptcy Code or threaten the same limited pool of money that the Trustee intends to pursue for the benefit of all Chapter 7 Creditors.

KSV should not be permitted to accomplish an end-run around an orderly and supervised restructuring process envisioned by Congress when enacting the Bankruptcy Code by angling themselves for a larger payout than other similarly situated creditors and gain an advantage by having their case heard first. The claims set forth in the KSV Complaint include generalized claims belonging to the Trustee and claims along the same theories of recovery which the Trustee has commenced on behalf of the Chapter 7 Creditors.

KSV alleges that Hunsicker, as a director and officer of the Debtor, materially

1

misrepresented the Debtor's financial condition.  The facts in the KSV Complaint predate the Petition Date and either describe fiduciary duty claims that allege harm to creditors generally or seek to recover from the same limited pool of funds that are available to pay the claims of all Chapter 7 Creditors.  Thus, the KSV Complaint includes claims that are property of the Estate and/or claims which threaten the Trustee's ability to recover for the Chapter 7 Creditors.

In fact, as the Court already found in the December 12, 2025 *Order Granting Chapter 7 Trustee's Motion for Injunctive Relief under Sections 105(a) and 362(a) of the Bankruptcy Code and a Preliminary Injunction under Rule 7065 of the Federal Rules of Bankruptcy Procedure* (the "Injunction Order"), KSV asserted claims which may be direct and claims that are derivative in nature, the prosecution of which is precluded absent leave of Court under section 362 of the Bankruptcy Code.  [Adv. Pro. D.I. 33, ¶ b].

The Trustee has recently commenced an adversary in this Court by filing a complaint against the Debtor's directors and officers alleging breaches of fiduciary duty and aiding and abetting Hunsicker's breaches of fiduciary duty (the "D&O Complaint").  In the D&O Complaint, the Trustee is seeking to hold Hunsicker and all other culpable people accountable for their actions for the benefit of Chapter 7 Creditors.  Any continuation of the Florida Litigation or assertion of further claims by KSV against the directors and officers of the Debtor threatens the Trustee's ability to maximize recovery for Chapter 7 Creditors to the extent that those actions assert causes of action which belong to the estate or which assert claims against the same parties based on the same or related facts.  Additionally, KSV directly and imminently threatens the proceeds of directors' and officers' insurance policies (the "D&O Policies").  If  KSV obtains a judgment or settlement in the Florida Litigation or other actions against directors and officers, those directors

and officers will seek to pay the amounts owed through the insurance coverage, which will diminish this valuable asset of the Estate for all other Chapter 7 Creditors.

For all of these reasons, the Court should extend the injunctive relief granted in the Injunction Order and enjoin KSV from continuing prosecution of lawsuits against Hunsicker and/or other directors and officers of the Debtor.

**RELEVANT PROCEDURAL AND FACTUAL HISTORY**

On June 20, 2025 (the "Petition Date"), the Debtor filed for voluntary relief under Chapter 7 of the Bankruptcy Code. The Trustee has been appointed as the Chapter 7 trustee for the Debtor's bankruptcy estate.

The factual background supporting the relief requested in the Motion and this Memorandum can be found in Motion and Affidavit of George L. Miller (the "Miller Affidavit"), attached hereto as **Exhibit A**.  The Motion and the Affidavit are incorporated herein in their entirety by reference.[1]

**ARGUMENT**

**I.      This Court has Jurisdiction to Grant the Requested Relief.**

As the Court found in the Injunction Order, the Court has jurisdiction over the claims raised in the Adversary Complaint pursuant to 28 U.S.C. §§ 1334 and 157.  [Adv. Pro. D.I. 33, ¶ a] Accordingly, continued enforcement of the automatic stay arising in the Chapter 7 Proceedings under section 362(a) of the Bankruptcy Code falls within this Court's core subject matter jurisdiction.  *See* 28 U.S.C. § 1334(b) and § 157(b)(2).

**II.     The Automatic Stay of Section 362(a) Compels an Extension of the Preliminary Injunction as to KSV.**

**a.       KSV Asserts Claims which Belong to the Estate**

---

[1] Any capitalized terms not defined herein shall have the meaning ascribed in the Motion and/or the Affidavit.

3

Section 362(a) provides that the filing of a petition for relief under the Bankruptcy Code operates to stay: "(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate…." 11 U.S.C. § 362(a)(3). The automatic stay is one of the fundamental debtor and creditor protections provided by the Bankruptcy Code. *Krystal Cadillac Oldsmobile GMC Truck, Inc. v. GMC (In re Krystal Cadillac Oldsmobile GMC Truck, Inc.)*, 142 F.3d 631, 637 (3d Cir. 1998). To that end, the automatic stay operates to stay automatically all judicial actions that were or could have been brought before a bankruptcy case. 11 U.S.C. § 362(a)(1); *Maritime Electric Inc. v. United Jersey Bank*, 959 F.2d 1194, 1203 (3d Cir. 1991).

Section 541(a)(1) defines the "estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." "In order for a cause of action to be considered 'property of the estate,' the claim must be a general one, with no particularized injury arising from it." *Emoral, Inc. v. Diacetyl (In re Emoral, Inc.)*, 740 F.3d 875, 879 (3d Cir. 2014) (internal citations omitted). "On the other hand, a claim for injury is personal to the creditor if other creditors have no interest in that claim." *Id.* This system promotes an orderly and equitable distribution of assets. *Id.* (quoting *Koch Refining v. Farmers Credit Union Cent. Exch., Inc.*, 831 F.2d 1339, 1344 (7th Cir. 1987)).

The nature of the cause of action determines whether the claim is general to all creditors and therefore property of the estate. *N.J. Dep't of Envtl. Prot. v. Occidental Chemical Corp. (In re Maxus Energy Corp.)*, 571 B.R. 650, 656 (Bankr. D. Del. 2017) (citing *Emoral, Inc.*, 740 F.3d at 879). There is a two-part test for determining whether a claim constitutes property of the bankruptcy estate: (1) the claim must be one that both existed at the commencement of the filing and that the trustee could have asserted on his own behalf under applicable state law; and (2) the

4

claim must be a general one, with no particularized injury arising from it. *Maxus Energy Corp.*, 571 B.R. 650 at 658 (internal citations omitted).  Claims are property of an estate when a plaintiff fails to evidence how any of the factual allegations that would establish their cause of action are unique compared to other creditors. *Emoral, Inc.*, 740 F.3d at 880 (citing *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 269 F.3d 164, 169-70 (3d Cir. 2002)); *see also In re Midway Games Inc.*, 428 B.R. 303, 313-14 (Bankr. D. Del. 2010) (holding that breach of fiduciary duty claims against the debtor's board members are derivative claims because the claims are limited to the harm which the debtor, not individual creditors, suffered).

The Court found in the Injunction Order that "[i]n the Florida Litigation, the KSV Defendants assert (a) claims which may be direct, and (b) claims that are derivative in nature, the prosecution of which is precluded absent leave of Court under 11 U.S.C. § 362."  [Adv. Pro. D.I. 33, ⁋ b].  For example, the KSV Complaint is based upon alleged misrepresentations made by Hunsicker to induce KSV to invest in the Debtor.  [Adv. Pro. D.I. 3-3, ⁋⁋ 12-22, 28-34].  Further, the KSV Complaint asserts claims based upon alleged breaches of fiduciary duties as CEO and a board member of the Debtor by using funds from KSV's investments for personal transactions. [Adv. Pro. D.I. 3-3, ⁋⁋ 36, 64-78].  All allegations in the KSV Complaint predate the Petition Date, and the claims set forth in the KSV Complaint existed prior to the commencement of this bankruptcy proceeding.

The Court also found that the Trustee demonstrated a likelihood of success on the merits related to the issue of whether the Florida Litigation threatens the Trustee's ability to recover proceeds from the same parties based on the same or related facts.  [Adv. Pro. D.I. 33, ⁋ c].  The KSV Complaint asserts claims that are general to all Chapter 7 Creditors and not particular to the KSV Defendants.  Specifically, the KSV Complaint brings claims against Hunsicker for alleged

breaches of fiduciary duty as a board member and CEO of the Debtor.  [Adv. Pro. D.I. 3-3, ¶¶ 64-78].

The claims raised in the KSV Complaint are based on theories of recovery and factual predicates that all Chapter 7 Creditors could assert: (i) Hunsicker, on behalf of the Debtor, sought funding for the Debtor; (ii) Hunsicker materially misrepresented the Debtor's financial condition when soliciting investments; (iii) Hunsicker engaged in various self-dealing transactions and other acts of corporate misconduct that made it impossible for the Debtor to be financially solvent, which other directors and officers acquiesced to; and  (iv) KSV wants Hunsicker and the D & O insurance carriers to pay.

   b. **KSV Seeks to Recover Assets Which Should Be Recovered by the Trustee for the Benefit of all Chapter 7 Creditors.**

Regardless of the ownership of claims against the directors and officers of the Debtor, parties other than the Trustee should be enjoined to avoid a race to the courthouse in which creditors and shareholders recover in a haphazard fashion without regard to their relative priorities. The Seventh Circuit concluded that such a remedy was warranted in *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998).

In *Fisher*, a chapter 7 trustee was appointed for Lake States Commodities Inc. and (2) Thomas W. Collins.  155 F.3d at 878-89.  Collins ran a "bucket shop" scheme, where he and his accomplices solicited and collected investments and converted them to their own use, and later used funds from newer investors to pay "returns" to earlier investors.  *Id.*  The Chapter 7 cases were filed when the scheme unraveled; the Debtors had taken in $100 million, had investor debt of $64 million, and had only approximately $2 million in cash.  *Id.*  A large group of plaintiffs (the "Apostolou Plaintiffs") filed securities, commodities, and common law fraud suits against the non-debtor accomplices (the "Apostolou Defendants") in federal court.  *Id.*

6

The Chapter 7 Trustee in *Fisher* filed a complaint that asserted that: (1) the Apostolou Plaintiffs' claims were property of the debtor's estates and subject to the stay of 11 U.S.C. §362; and (2) in the alternative, the Apostolou Plaintiffs' claims were sufficiently related to those of the Trustee to support a section 105 injunction against the Apostolou Plaintiffs, staying their lawsuits until the Trustee completed his pursuit of the Apostolou Defendants. *Id.*

The Bankruptcy Court entered an injunction on the basis that both parties were pursuing the same dollars from the same defendants to redress the same harms. *Id.* at 879  The Bankruptcy Court also concluded that the claims filed by the Apostolou Plaintiffs were property of the bankruptcy estate. *Id.*  The District Court reversed, concluding that those claims were not property of the estate. *Id.*  The Seventh Circuit reversed the District Court, concluding that because of the relationship between the claims of the Apostolou Plaintiffs and the claims of the Lake States estate, the Apostolou Plaintiffs must wait their turn behind the Trustee, who has the responsibility to recover assets for the estate on behalf of creditors as a whole. *Id.* at 881-83.  The Seventh Circuit observed that the claims that individual creditors would bring (under the Commodities Exchange Act, Securities Acts of 1933 and 1934, RICO, and common law fraud) were <u>not</u> the same claims that the Trustee would bring. *Id.* at 880

The Seventh Circuit recognized that the injuries of the Apostolou Plaintiffs may not be "fully measured" by debts with Lake States – and some may have separate and distinct injury – for example through RICO, and might be able to get punitive damages. *Id.* at 881.  However, the Seventh Circuit concluded that in limited circumstances, the Trustee is able to temporarily block adjudication of claims <u>that are not property of the estate</u> by petitioning the Bankruptcy Court to enjoin the other litigation, if the other litigation is sufficiently "related to" the Trustee's work on behalf of the estate. *Id.* at 882.  The Seventh District concluded that jurisdiction of the Bankruptcy

7

Court to stay actions in other courts extends to claims by and against the debtor, and includes suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate. *Id.* at 882-83.

Because the claims of Apostolou Plaintiffs were claims to the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy, the claims by the trustee and the claims of creditors against third parties were so closely related that allowing the creditors to convert the bankruptcy proceeding into a race to the courthouse would derail the bankruptcy proceeding. *Id.* As a result, the Seventh Circuit concluded that it was appropriate to stay the other proceedings. *Id.*; *see also In re Stein*, 314 B.R. 306, 311-12 (D.N.J. 2004) (holding that "bankruptcy court jurisdiction extends to suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate") (quoting *Zernand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 161-62 (7th Cir. 1994).

Just as in *Fisher*, the central feature of this Chapter 7 case is an extensive fraud. The Trustee alleges that hundreds of millions of dollars were invested in the Debtor based on fraudulent financial statements over a period of several years. The Florida Litigation seeks to recover on the basis of this fraud, but not for the benefit of all Chapter 7 Creditors.

Accordingly, such claims would directly compete with the Trustee's claims against the same directors and officers made in the D&O Complaint. Indeed, the Florida Litigation and any further litigation brought by KSV against officers and directors would be against the same defendants named in the Trustee's D & O Complaint such that the limited pool of $5 million in coverage under the D&O Policies is threatened and, even more, the limited assets of the individuals to pay for any recovery on these claims is threatened.

In short, just as in *Fisher*, the Trustee and investors are pursuing the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals as part of the same conspiracy.

Further, that there is a race to the courthouse that threatens the Trustee's ability to recover for creditors in this case is anything but hypothetical.  KSV has already obtained a default judgment in excess of $50 million (by virtue of Hunsicker's failure to appear and defend despite Hunsicker previously obtaining stay relief for the purpose of advancement of defense costs in this very matter); has already defeated a motion to vacate the judgment; has already commenced execution proceedings with respect to its $50 million judgment; and is permitted under the terms of the Injunction Order to continue litigation of the appeal with respect to its judgment.  If the Florida Litigation is permitted to resume, there is no doubt that KSV will jump to the front of the line, ahead of the Trustee (and therefore, all creditors in the bankruptcy case).

The Trustee's claims must be protected from KSV's attempts to jump to the front of the line to secure a judgment before similarly situated Chapter 7 Creditors.

**III.**   **The Standard for Injunctive Relief under Section 105(a) of the Bankruptcy Code is Satisfied.**

Section 105 injunctions are governed by the well-known four factor inquiry governing the entry of an injunction under Rule 65 of the Federal Rules of Civil Procedure:

> When issuing a preliminary injunction pursuant to its powers set forth in section 105(a), a bankruptcy court must consider the traditional factors governing preliminary injunctions issued pursuant to Federal Rule of Civil Procedure 65. The four factors which must be considered are (1) the likelihood of the plaintiff's success on the merits, (2) whether plaintiff will suffer irreparable injury without the injunction, (3) the harm to others which will occur in the injunction is granted, and (4) whether the injunction would serve the public interest.

*Am. Imaging Servs., Inc. v. Eagle-Picher Indus, Inc. (In re Eagle Picher Indus.)*, 963 F.2d 855,

858 (6th Cir. 1992) (citation omitted).  To protect their "related to" jurisdiction, bankruptcy courts are empowered to issue any necessary order, process, or judgment, including a stay of actions to which the debtor is not a party.  *Fisher*, 155 F.3d at 882 (citing *Zerand-Bernal*, 23 F.3d 159, 162 (7th Cir. 1994)).  A bankruptcy court can enjoin proceedings in other courts pursuant to section 105(a) when it is satisfied that such proceedings would defeat or impair its jurisdiction over a debtor's case.  *Id.* (citing *In re L & S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir. 1993)).

The Third Circuit has held that a party seeking preliminary equitable relief "must meet the threshold for the first two 'most critical' factors; it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief."  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).  If these two factors are met, the court must then consider the remaining two factors and, in its sound discretion, determine if all four factors balance in factor of granting the requested preliminary relief.  *Id.*

In the Injunction Order, the Court found that the Trustee demonstrated: (i) a likelihood of success on the merits related to the issue of whether the Florida Litigation threatens the Trustee's ability to recover proceeds from the same parties based on the same or related facts; (ii) the Estate will be irreparably harmed if KSV is permitted to continue enforcing or executing on the Final Judgment After Default in the Florida Litigation; (iii) KSV will not suffer significant harm by entry of a preliminary injunction staying the Florida Litigation; and (iv) a preliminary injunction staying the Florida Litigation is in the public interest.  [Adv. Pro. D.I. 33, ¶ c].

For the reasons explained below, these factors continue to be met and the Court should extend the Preliminary Injunction of the Florida Litigation and impose an injunction.

a.  <u>Likelihood of Success on the Merits</u>

The facts overwhelmingly support entry of a preliminary injunction.[2]  It is obvious from the face of the Complaints that KSV is pursuing breach of fiduciary duty claims and aiding and abetting breach of fiduciary duty claims that are generalized to all Chapter 7 Creditors and which are property of the Estate.  Further, the KSV Complaint seeks recovery against the same limited pool of resources which the Trustee is pursuing through his D&O Complaint for the benefit of all Chapter 7 Creditors, affecting the amount of property in the Debtor's Estate and the allocation of property among Chapter 7 Creditors such that this Court's jurisdiction over the Debtor is defeated or impaired.

To establish a likelihood of success on the merits, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits."  *Punnett v. Carter*, 621 F.2d 578, 583 (3d Cir. 1980) (quoting *Oburn v. Sharp*, 521 F.2d 142, 148 (3d Cir. 1970)).  Further, under *Reilly*, the Third Circuit "do[es] not require at the preliminary stage a more-likely-than-not showing of success…because a ''likelihood' of success…does not mean more likely than not.'"  *Reilly*, 858 F.3d at 179 n.3 (alterations and internal citations omitted).  The Third Circuit also recognizes that an injunction can be issued absent proof of injury, as an injunction is appropriate to "prevent the occurrence of injuries" rather than "actual legal damage" already having been sustained.  *Ride the Ducks of Phila., LLC v. Duck Boat Tours*, Inc., 138 Fed. App'x 431, 434 (3d Cir. 2005) ("Although such injury has not yet occurred, because the purpose of a preliminary injunction is to prevent the occurrence of injuries, the demonstration

---

[2] The facts which the Court needs to adjudicate the motion are found within the four corners of the KSV Complaint and the Motion.  Accordingly, no discovery is needed to develop the factual record further before the Motion is ripe for adjudication.  *See SN Liquidation, Inc.*, 388 B.R. at 583.  Here, the factual predicates for the relief sought by the Motion similarly consist of public information, insurance policies, and court filings and are supported by the verified Adversary Complaint.  The record does not require any further development and the Motion is ripe for adjudication.

11

by [plaintiff] of a 'presently existing actual threat' of injury suffices at this stage of the proceedings.").

In the Injunction Order, the Court found that the Trustee demonstrated a likelihood of success on the merits related to the issue of whether the Florida Litigation threatens the Trustee's ability to recover proceeds from the same parties based on the same or related facts.  [Adv. Pro. D.I. 33, ⁋ c].

The Trustee has set forth a prima facie case that the automatic stay applies to bar the Florida Litigation because: (i) KSV asserts general claims that are property of the Estate; and (ii) the Florida Action directly and imminently threatens the Estate and its Property – the D &O Policies and any other resources which may be recovered on behalf of all Chapter 7 Creditors.

Thus, the Trustee has met the first factor of the analysis by demonstrating a reasonable probability of success on the merits that the Florida Litigation violate the automatic stay.

b.  Irreparable Harm

The Estate will be irreparably harmed if KSV is permitted to continue to pursue the Florida Litigation or actions against other officers and directors of the Debtor.  Courts have recognized at least two forms of irreparable harm applicable to the Trustee.

A trustee may suffer harm if the action it seeks to enjoin threatens to deplete the assets of the Estate.  *See Fisher*, 155 F.3d at 882 (holding that an injunction of a creditor's suit was proper when creditors asserted "claims to the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy.").

The Estate will suffer substantial and irreparable harm if KSV can continue prosecution of the Florida Litigation, or proceed against other officers and directors, which would seek recovery

12

on assets to which the Trustee will assert claims.  In the Injunction Order, the Court found that the Trustee demonstrated the Estate would be irreparably harmed if KSV were permitted to continue enforcing or executing on the Final Judgment After Default entered in the Florida Litigation.  [Adv. Pro. D.I. 33, ⁋ c].

The immediacy and irreparability of the harm the Estate is facing relative to the Florida Litigation is not hypothetical.  KSV has a default judgment in excess of $50 million and will continue efforts to execute on the default judgment if the Florida Litigation is not enjoined.  KSV will also likely assert claims against other directors and officers of the Debtor, including defendants named in the D&O Complaint, if KSV is not enjoined from doing so.  These actions threaten the limited pool of assets these third parties hold which could be recovered for the benefit of all Chapter 7 Creditors instead of the creditors who won the race to the courthouse.

Thus, the Trustee has met the second factor, as both these harms are real, identifiable, and would cause injury to the Estate and the Chapter 7 Creditors.

c.   Harm to the Non-Moving Party

As the non-moving party, KSV will suffer no harm through entry of a preliminary injunction.  To the contrary, KSV would be treated in the same fashion as similarly situated parties instead of jumping in front of them.  To that end, in the Injunction Order, the Court held that the Trustee demonstrated KSV would not suffer significant harm by entry of the Preliminary Injunction.  [Adv. Pro. D.I. 33, ⁋ c].

Extending the Preliminary Injunction as to the Florida Litigation will merely help maintain the status quo relative to the property of the Estate while the Trustee works to discharge his fiduciary duties to the Chapter 7 Creditors, namely through the prosecution of his D&O Complaint.

Even if KSV could suffer harm as a result of the entry of a preliminary injunction (which the Trustee disputes), such alleged harm is far outweighed by the actual harm the Estate and other Chapter 7 Creditors will suffer if the Florida Litigation proceeds.

      d.  <u>Public Interest</u>

Enjoining the Florida Litigation and similar actions against directors and officers is in the public interest because it protects assets of the Estate from misappropriation and depletion. *See Shubert v. Premier Paper Prods., LLC (In re Am. Tissue, Inc.)*, No. 01-10370, 2006 WL 3498065 *5 (Bankr. D. Del. Dec. 4, 2006) ("The public interest is served when the Court imposes relief which maintains integrity in financial and business dealings and protects bankrupt estates from misappropriation of assets. Here, granting relief to the Trustee while eliminating or reducing harm to the defendants satisfies the final requirement for the issuance of a preliminary injunction."); *see also In re W.R. Grace & Co.*, 386 B.R. at 36 (holding that the public interest weighs in favor of issuing an injunction when considering the volume of claims, jurisdictional spread, and numerous controversies).

The Third Circuit also has noted that, as a practical matter, "if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserver Program, Inc.*, 42 F.3d 1421, 1427, n. 8 (3d Cir. 1994).

In the Injunction Order, the Court held that the Trustee demonstrated that a preliminary injunction staying the Florida Litigation is in the public interest. [Adv. Pro. D.I. 33, ¶ c]. It is still crucial to preserve the remaining assets of the Estate and protect the Trustee's ability to seek recovery from Hunsicker and/or other directors and officers of the Debtor, which would benefit all Chapter 7 Creditors. Thus, the public interest will be served by extending the Preliminary

Injunction on the Florida Litigation because it will maintain the integrity of the bankruptcy process and protect against the misappropriation of the Estate's assets.

## IV.    In the Alternative, Issuance of a Preliminary Injunction under Rule 7065 of the Bankruptcy Rules is Appropriate.

This Court is also empowered to issue a preliminary injunction enjoining the Florida Litigation under Bankruptcy Rule 7065.   The standards for such orders are similar to those applicable to a section 105(a) injunction as set forth above.  See, e.g., *In re Am. Film Techs., Inc.*, 175 B.R. at 848-49.  As explained *supra*, these requirements are easily satisfied in the matter *sub judice*.

## CONCLUSION

For all these reasons and authorities cited, the Trustee respectfully requests that this Court: (i) grant this Motion and the relief requested herein; (ii) extend the Preliminary Injunction, after a hearing, to enjoin the Florida Litigation and any other actions against officers and directors of the Debtor pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065; and (iii) grant such further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: March 30, 2026              **DILWORTH PAXSON LLP**

*/s/ Peter C. Hughes*
Peter C. Hughes (No. 4180)
800 N. King Street, Suite 202
Wilmington, DE 19801
Telephone:    302-571-9800
Facsimile:    302-571-8875
Email:         phughes@dilworthlaw.com

And

Peter C. Hughes
Jack Small
1650 Market St., Suite 1200
Philadelphia, PA 19103
Telephone:      (215) 575-7000
Facsimile:       (215) 754-4603
Email:            phughes@dilworthlaw.com
Email:            jsmall@dilworthlaw.com

*Attorneys for George L. Miller, Chapter 7 Trustee*

16